**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **DONALD BENTON, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **Case No. 2:14CV92NCC** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision

of the Commissioner denying the application of Donald Benton, Jr., (Plaintiff) for Disability

Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401 et

seq. Plaintiff has filed a brief in support of the Complaint. (Doc. 14). Defendant has filed a

brief in support of the Answer. (Doc. 19). The parties have consented to the jurisdiction of the

undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). (Doc. 9).

## I.
## PROCEDURAL HISTORY

On March 5, 2012, Plaintiff filed his application for DIB, alleging a disability onset date

of March 1, 2008. (Tr. 134-40). Plaintiff's applications were denied, and he requested a hearing

before an Administrative Law Judge (ALJ). (Tr. 78-82, 84-85). After a hearing, by decision,

dated August 14, 2013, the ALJ found Plaintiff not disabled. (Tr. 11-22). On July 21, 2014, the

Appeals Council denied Plaintiff's request for review. (Tr. 1-6). As such, the ALJ's decision

stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. See id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity (RFC). See Steed v. Astrue, 524 F.3d 872, 874

n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. See Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. See Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d

1019, 1022 (8th Cir. 2002).  See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007).  In Bland

v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> The concept of substantial evidence is something less than the weight of the
> evidence and it allows for the possibility of drawing two inconsistent conclusions,
> thus it embodies a zone of choice within which the Secretary may decide to grant
> or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely

because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87

F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004)

("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record

de novo.  See Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005);

McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th

Cir. 1992).  Instead, the district court must simply determine whether the quantity and quality of

evidence is enough so that a reasonable mind might find it adequate to support the ALJ's

conclusion.  See Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel,

228 F.3d 860, 863 (8th Cir. 2000)).  Weighing the evidence is a function of the ALJ, who is the

fact-finder.  See Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987).  See also Onstead v.

Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a

reviewing court if it is supported by "substantial evidence").  Thus, an administrative decision

which is supported by substantial evidence is not subject to reversal merely because substantial

evidence may also support an opposite conclusion or because the reviewing court would have

decided differently.  See Krogmeier, 294 F.3d at 1022.  See also Eichelberger, 390 F.3d at 589;

Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661

(8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). "While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) The claimant's daily activities;

(2) The subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) Any precipitating or aggravating factors;

(4) The dosage, effectiveness, and side effects of any medication; and

(5) The claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322.

The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. See id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. See Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him or her to reject the plaintiff's complaints. See Guilliams, 393 F.3d at 801; Masterson, 363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he or she considered all of the evidence. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. See id. Although credibility determinations are primarily for the ALJ and not the Court, the ALJ's credibility assessment must be based on

substantial evidence.  See Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments.  20 C.F.R. § 404.1545(b)-(e).  The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy.  See Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)).  The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work.  See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.  The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983).  Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities.  See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert (VE) may be used.  An ALJ posing a hypothetical to a VE is not required to include all of a plaintiff's limitations, but only those which the ALJ finds credible.  See Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical.");  Rautio, 862 F.2d at 180.  Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons.  See Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

## III.
## DISCUSSION

The issue before the Court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. See Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the Court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. See Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff, who was fifty-four years old at the time of the hearing, testified that he previously worked as a line cook, warehouse manager, assembler, and roll tender; that he was fired from his last job because he tried to start a union; that he collected unemployment compensation until January 2009; that he could no longer work due to residuals from a stroke and pain in his back, hips, and shoulders; and that his stroke affected his vision, memory, and concentration. (Tr. 31, 35-56).

The ALJ found that Plaintiff last met the insured requirements on December 31, 2012; that he had not engaged in substantial gainful activity from his alleged onset date of March 1, 2008, through the date he was last insured; that Plaintiff had the severe impairments of degenerative disc disease, left shoulder pain with rotator cuff injury, hypertension, chronic obstructive pulmonary disease (COPD), and chronic bronchitis; and that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. The ALJ further found that Plaintiff had the following RFC: Plaintiff could perform light work except that he could only occasionally climb ramps and stairs; he could never climb ladders, ropes or scaffolds; he could only occasionally balance, stoop, kneel, crouch, and crawl; he was limited to occasional reaching overhead with the left upper extremity; and he needed to avoid frequent exposure to extreme heat, extreme cold, fumes, odors, dusts, gases, and poor ventilation,

as well as hazards such as dangerous machinery and unprotected heights. The ALJ finally found that Plaintiff could not perform his past relevant work; that, based on a VE's testimony, there was other work in the national economy, existing in significant numbers, which Plaintiff could perform; and that, therefore, Plaintiff was not disabled. (Tr. 11-22).

Plaintiff contends that the ALJ's decision is not based on substantial evidence because the ALJ failed to explain how the evidence supported her RFC determination and because the ALJ cited "impermissible reasons" for finding Plaintiff not credible. Plaintiff also contends the ALJ erred in classifying his stroke as not severe, and that, when determining Plaintiff's RFC, the ALJ erred in describing Gina Anderson, a State agency single decision maker (SDM) as a *medical* professional, and relying on Mr. Anderson's opinion in formulating Plaintiff's RFC. In addition, Plaintiff contends that the ALJ erred in relying on the opinion of Stephen Williamson, M.D., a consultative examiner. (Doc. 14 at 7-14). For the following reasons, the Court finds Plaintiff's arguments are without merit and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

## A.    Plaintiff's Credibility:

The Court will first address the ALJ's credibility findings as Plaintiff's credibility is relevant to other factors, including the weight given to opinions of record. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010). As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot

substitute its judgment for that of the ALJ.  See Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882.

To the extent that the ALJ did not specifically cite Polaski, other case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence.  Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995).  Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make.  See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000).  See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996).

In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts."  Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001).  "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination."  Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003).  See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006).  For the following reasons, the Court finds that the reasons offered by the ALJ in support of her credibility determination are based on substantial evidence.

First, the ALJ considered that Plaintiff's subjective allegations were inconsistent with the objective medical evidence. (Tr. 15-19). The objective medical evidence, or lack thereof, is an important factor to consider in determining credibility. See 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (objective medical evidence is a useful indicator in making reasonable conclusions about the intensity and persistence of a claimant's symptoms and the effect those symptoms may have on a claimant's ability to work); Gonzales v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006) (ALJ may find a claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary).

As considered by the ALJ, an x-ray of Plaintiff's lumbar spine, taken when he presented to the emergency room on April 27, 2007, after being in a motor vehicle accident, showed degenerative changes but *no evidence for acute injury*. (Tr. 274-81). Records from May 4, 2007, reflect that Plaintiff was being charged with driving under the influence for his April 2007 accident. Also, on May 4, 2007, Plaintiff complained of back and rib pain, and he was diagnosed with right rib fracture. (Tr. 258-59). A June 13, 2007 computed tomography (CT) scan of Plaintiff's chest showed three healing rib fractures on the right side. (Tr. 262). On June 28, 2007, Plaintiff's doctor released him to return to work. (Tr. 255).

On March 12, 2008, Plaintiff presented to the emergency room, complaining of a headache, facial and neck numbness, and left hand tingling, after being punched during a bar fight. Upon examination, it was noted that Plaintiff was alert, with no evidence of dysarthria,[1] although Plaintiff's wife reported that he had intermittent episodes of dysarthria. (Tr. 308, 311).

---

[1] "Dysarthria is a motor speech disorder. It results from impaired movement of the muscles used for speech production, including the lips, tongue, vocal folds, and/or diaphragm. The type and severity of dysarthria depend on which area of the nervous system is affected." http//www.asha.org/public/speech /disorders/dysarthria/ (last visited Mar. 17, 2016).

A CT scan of Plaintiff's neck showed a three-centimeter long right internal carotid artery dissection. Plaintiff was admitted for treatment and a vascular surgical evaluation. (Tr. 311-12).

Also, on March 12, 2008, Plaintiff was examined by Kristin Tate, M.D., who reported that Plaintiff's extremities were warm and pink, without cyanosis or edema and that Plaintiff had *"+5/+5 muscle strength" in his upper and lower extremities*. (Tr. 320) (emphasis added). On March 13, 2008, Victor Phillips, M.D., evaluated Plaintiff. Upon examination, Dr. Phillips reported that Plaintiff's vital signs were stable; that he was in no acute distress; that his neck was supple with no evidence of jugular venous distention; that his heart had regular rate and rhythm; that Plaintiff was breathing "easily"; that his extremities had no evidence of cyanosis or edema; that Plaintiff's feet and hands were warm to touch; that Plaintiff's "motor and sensory [were] grossly intact"; and that he was alert and oriented. Dr. Phillips' impression was traumatic dissection of the right internal carotid artery. He recommended Plaintiff be treated with a Heparin drip. (Tr. 316-17). Also, Ahmad Hooshmand, M.D., who examined Plaintiff on March 15, 2008, noted that Plaintiff had intact sensory modalities; that his coordination showed normal finger-to-nose test; that his extremities did not show evidence of pitting edema; and that Plaintiff's *condition was stable* with *no permanent neurological deficits*. Dr. Hooshmand recommended that Plaintiff avoid any straining that would contribute to the extension of his dissection and found no need for surgical intervention. (Tr. 308-10).

When Plaintiff next presented to the emergency room, on March 24, 2008, with abdominal pain, he reported a *slight residual memory loss* and *slightly decreased right-sided fine motor skills*. On examination, Plaintiff's extremities were without clubbing, cyanosis and edema; his sensation to light touch was intact; his lungs were clear and symmetric; and he had *full strength in all major muscle groups*. (Tr. 298-300). When Plaintiff presented to the

emergency room, on July 14, 2008, with slurred speech, he was able to walk without assistance. A CT scan of his head showed no acute changes since his last visit.  (Tr. 270-71).

On September 19, 2008, Plaintiff presented to the emergency room, complaining of right lower extremity swelling, weakness, and reduced coordination in his left arm.  Plaintiff was diagnosed with acute deep venous thrombosis (DVT)[2] in his right calf and right posterior tibial vein.  Notably, Plaintiff told Frederick Wilson, M.D., that he had not been taking his anticoagulation medication.  (Tr. 286-90).

When Plaintiff next presented for medical care, over one year later, on February 25, 2010, it was for alcohol detoxification.  (Tr. 322-24).  Plaintiff was then seen on March 17, 2012, by Stephen Williamson, M.D., for a consultative examination in connection with his application for disability benefits.  Dr. Williamson reported that Plaintiff complained of pain, stiffness, numbness, tingling, swelling, poor memory, difficulty with concentration, left-sided weakness, and shortness of breath.  Upon examination, Dr. Williamson reported that:  Plaintiff's memory was normal; his concentration was good; he had a *steady gait* and did not require an assistive device; he had no joint swelling or tenderness; Plaintiff's sensory examination was normal; Plaintiff had *full strength in his upper and lower extremities, finger abduction, and handgrip*; he had 4/5 strength in his left deltoids and biceps; although Plaintiff wheezed and coughed during the examination, he did not demonstrate shortness of breath; he *could lift, carry, and handle light objects without difficulty*; *he could squat and rise without difficulty*; he could hop on either foot; and Plaintiff had decreased cervical and left shoulder range of motion (ROM) and normal ROM in all other areas.  Dr. Williamson diagnosed Plaintiff with left shoulder pain, back pain, a stroke

---

[2]  "Deep vein thrombosis (DVT) occurs when a blood clot (thrombus) forms in one or more of the deep veins in your body, usually in your legs.  [DVT] can cause leg pain or swelling, but may occur without any symptoms. . . . .  [DVT] is a serious condition because blood clots in your veins can break loose, travel through your bloodstream and lodge in your lungs, blocking blood flow (pulmonary embolism)." http//www.mayoclinic.org/diseases-conditions/deep-vein-thrombosis (last visited Mar. 17, 2016).

with left-sided weakness, tinnitus, bronchitis, and a history of ruptured discs. Dr. Williamson opined that, due to back pain, Plaintiff could lift and carry fifteen pounds; that his back pain did not otherwise impair his ability to sit, stand, or walk; that Plaintiff could stand for twenty minutes and walk for ten minutes due to shortness of breath; that Plaintiff could handle, feel, grasp, and finger frequently; and that Plaintiff could occasionally bend, stoop, crouch, and reach with his left shoulder. (Tr. 332-39).

Approximately a year after Plaintiff saw Dr. Williamson, on March 9, 2013, Plaintiff presented to the emergency room and was diagnosed with transient ischemic attack (TIA),[3] alcohol withdrawal, and bronchitis. A chest x-ray revealed no heart failure or acute infiltrate; an EKG showed normal sinus rhythm; and an echocardiogram was normal. Upon Plaintiff's discharge, on March 11, 2013, it was noted that Plaintiff was feeling much better. (Tr. 345-47).

Second, the ALJ considered that the long lapses between Plaintiff's seeking medical treatment, as set forth above in regard to the objective medical evidence, were inconsistent with his claim of disability. (Tr. 16). A lack of regular treatment for an alleged disabling condition detracts from a claimant's credibility. See 20 C.F.R. § 404.1529(c)(3)(v) (the agency will consider the claimant's treatment when evaluating his symptoms); Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006) (upholding an ALJ's determination that a claimant lacked credibility due, in part, to "absence of hospitalizations . . ., limited treatment of symptoms, [and] failure to diligently seek medical care"); Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000).

The ALJ further considered that Plaintiff had no follow up treatment for his history of stroke, and that he saw no doctors for back pain, breathing difficulties, or hypertension between his alleged onset date, March 1, 2008, and the date he was last insured, December 31, 2012. The

---

[3] "A transient ischemic attack (TIA) is like a stroke, producing similar symptoms, but usually lasting only a few minutes and causing no permanent damage." http//www.mayoclinic.org/diseases-conditions/transient-ischemic-attack (last visited Mar. 17, 2016).

ALJ also considered that Plaintiff did not receive injections, physical therapy or other treatment for his alleged pain. (Tr. 16). Additionally, the ALJ considered that, although Plaintiff claimed his lack of treatment was the result of an inability to afford care, Plaintiff said that he had not looked into low cost or free medical clinics in his area. (Tr. 16). Cf. Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999) (holding that, despite a plaintiff's argument that he was unable to afford prescription pain medication, an ALJ may discredit complaints of disabling pain where there is no evidence that the claimant sought treatment available to indigents).

Third, the ALJ considered that Plaintiff's allegations of disability were inconsistent with his receipt of unemployment benefits; that Plaintiff filed for unemployment benefits and received them until January 2009, although he alleged total disability beginning March 1, 2008; and that Plaintiff testified that he made the required two job-related efforts to obtain employment and checked into a career center while he was receiving benefits. (Tr. 18-19). Plaintiff argues that it was impermissible for the ALJ to consider that he received unemployment benefits. (Doc. 14 at 12-13). However, as considered by the ALJ, although not conclusive of disability, a claimant's receipt of unemployment benefits may reasonably erode the credibility of his disabling complaints. Smith v. Colvin, 756 F.3d 621, 625 (8th Cir. 2014). Indeed, to qualify for unemployment benefits a claimant must assert that he is able and available to work. See Jernigan v. Sullivan, 948 F.2d 1070, 1074 (8th Cir. 1991) (finding claimant's application for unemployment benefits adversely affected his credibility; "[a] claimant may admit an ability to work by applying for unemployment compensation benefits because such an applicant must hold himself out as available, willing and able to work.").

Fourth, the ALJ considered that Plaintiff's allegations of disability were inconsistent with his activities. (Tr. 18). As considered by the ALJ, Plaintiff reported, when he filed for disability

benefits, that he went to the library two or three times a week, helped with dinner, and watched television; he reported no limitations on his ability to perform personal care tasks; and he indicated he was able to prepare his own meals on a daily basis, to wash dishes, to do laundry, to go out alone, to shop in stores twice a week, and to go fishing. (Tr. 18, 202-205). Plaintiff also testified, at the hearing, that he made breakfast for his nieces and nephews and walked four to five blocks to watch baseball games or socialize for a few hours. (Tr. 39, 41-43). The ALJ further considered that Plaintiff testified, at the hearing, that he engaged in very few activities; that he was much more active in 2008 than he was at the time of the hearing; that he went bass fishing once a month in 2011 and 2012; and that he played softball in 2010. (Tr. 18, 41-42, 46).

Plaintiff argues that his activities did not prove that he could work and that the ALJ should have considered his later reports of more limited activities, including that he no longer fished. (Doc. 14 at 14). In fact, as discussed above, the ALJ did consider Plaintiff's testimony that he no longer could engage in activities to the extent he did at the time he filed his application. Plaintiff's activities, moreover, as he described them at the time of the hearing, can nonetheless be seen as inconsistent with his subjective complaints of disabling impairments and may be considered in judging the credibility of complaints. See McDade v. Astrue, 720 F.3d 994, 998 (8th Cir. 2013) (ALJ properly discounted plaintiff's credibility where, among other factors, plaintiff "was not unduly restricted in his daily activities, which included the ability to perform some cook[ing], tak[ing] care of his dogs, us[ing] a computer, driv[ing] with a neck brace, and shop[ping] for groceries with the use of an electric cart"). See also Ponders v. Colvin, 770 F.3d 1190 (8th Cir. 2014) (holding that substantial evidence supported the ALJ's denial of disability benefits in part because claimant "perform[ed] light housework, washe[d] dishes, cook[ed] for her family, d[id] laundry, c[ould] handle money and pay[] bills, shop[ped] for

groceries and clothing, watche[d] television, dr[ove] a vehicle, le[ft] her house alone, regularly attend[ed] church, and visit[ed] her family"); Roberson v. Astrue, 481 F.3d, 1020, 1025 (8th Cir. 2007) (holding that the ALJ's denial of benefits was supported based in part because Plaintiff fixed meals, did housework, shopped for groceries, and visited friends).  Moreover, to the extent Plaintiff urges the Court to reweigh the evidence regarding Plaintiff's daily activities and draw its own conclusion in this regard, it is not the function of the Court to do so.  See Bates v. Chater, 54 F.3d 529, 531-32 (8th Cir. 1995) ("As we have stated many times, we do not reweigh the evidence presented to the ALJ, and it is the statutory duty of the ALJ, in the first instance, to assess the credibility of the claimant and other witnesses.") (internal citations, punctuation, and quotations omitted).  In any case, Plaintiff's daily activities were only one of many factors considered by the ALJ when determining Plaintiff's credibility.

Fifth, the ALJ considered that Plaintiff was prescribed blood thinners after his stroke in March 2008 and again in September 2008, when he had a DVT, but that the record did not reflect that Plaintiff had been taking prescription medications regularly since that time.  (Tr. 18).  See Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999).  Further, the Court notes that, on September 19, 2008, Plaintiff said that he had discontinued his blood thinner medication.  (Tr. 288).  See Wildman v. Astrue, 596 F.3d 959, 966 (8th Cir. 2010) (noncompliance is a basis for discrediting a claimant; when claimant was compliant with dietary recommendations his pain was under good control; claimant's noncompliance with a diet regimen prescribed by doctor contributed to a negative credibility determination).

Sixth, the ALJ considered that there was some indication that Plaintiff stopped working for reasons unrelated to his alleged disability, as he reported that he was terminated from his last job because he attempted to get a union started.  (Tr. 19).  Leaving work for reasons unrelated to

an alleged disabling impairment weighs against a finding of disability. See Medhaug v. Astrue, 578 F.3d, 805, 816-17 (8th Cir. 2009) (finding it relevant that claimant did not leave his job because of injury but because he was laid off); Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992).

**B.      The Severity of Plaintiff's Stroke:**

Plaintiff asserts that his stroke resulted in poor memory and difficulty concentrating and that the ALJ erred in not finding that the effects he suffered from his stroke were severe. (Doc. 14 at 11).

As stated above, at Step Two of the sequential analysis, an ALJ is required to determine if a claimant has a severe impairment or combination of impairments. "The severity Regulation adopts a standard for determining the threshold level of severity: the impairment must be one that 'significantly limits [a claimant's] physical or mental ability to do basic work activities.'" Bowen v. Yuckert, 482 U.S. 137, 153 n.11 (1987) (quoting 20 CFR § 404.1520(c)). A severe impairment is an impairment or combination of impairments that significantly limits a claimant's physical or mental ability to perform basic work activities without regard to age, education, or work experience. See 20 C.F.R. §§ 404.1520(c), 404.1521(a). However, "[a]n impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007); see also 20 C.F.R. § 404.1521(a) (describing basic work activities). In other words, if the impairment has only a minimal effect on the claimant's ability to work, then it is not severe. See Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007). A plaintiff has the burden of establishing a severe impairment. See Kirby, 500 F.3d at 707.

An impairment or combination of impairments are not severe if they are so slight that it is unlikely that the claimant would be found disabled even if his age, education, and experience were taken into consideration. Bowen, 482 U.S. at 153 ("The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account."). Moreover, "'[a]n impairment imposes significant limitations when its effect on a claimant's ability to perform basic work is more than slight or minimal.'" Warren v. Shalala, 29 F.3d 1287, 1291 (8th Cir. 1994) (quoting Cook v. Bowen, 797 F.2d 687, 690 (8th Cir. 1986)). See also Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (holding that if a claimant's impairments would have no more than a minimal effect on his ability to work, they do not satisfy the requirement of step two). 20 C.F.R. § 404.1521(b) defines basic work activities as follows:

(b) Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include–

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

As discussed above in regard to Plaintiff's credibility, when he presented to the emergency room, in March 2008, Plaintiff was diagnosed with a dissection of the right internal carotid artery, but, upon discharge, Dr. Hooshmand reported that Plaintiff's condition was *stable* and he had *no permanent neurological deficits* and noted that there was *no need for surgical intervention*. (Tr. 309-10). Notably, a month later, Plaintiff told an emergency room doctor that

he had only a *slight residual memory loss* and *slightly decreased right-sided fine motor skills*. (Tr. 298). Dr. Williamson, moreover, found, in March 2012, that Plaintiff's *memory was normal*; that his *concentration was good*; that he had a *steady gait, full strength in his upper and lower extremities, finger abduction, and handgrip*; and that he *did not demonstrate shortness of breath, could squat without difficulty,* and *had normal ROM, with the exception of the decreased cervical and left shoulder ROM*. (Tr. 335). The Court finds, therefore, that ALJ's determination that Plaintiff did not suffer severe effects from his stroke is based on substantial evidence.

To the extent Plaintiff contends that the ALJ should have ordered further testing to determine the severity of Plaintiff's stroke, an ALJ is required to do so only if the medical records presented to her do not provide sufficient medical data to determine whether the claimant is disabled. See Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir. 1994); 20 C.F.R. § 404.1519a(b). Here, as stated above, the evidence of record, including a report from a consultative examiner, Dr. Williamson, showed that Plaintiff had only slight residual memory loss after his stroke, no permanent neurological deficits, and normal memory and concentration. (Tr. 298, 309, 335). See Kamann v. Colvin, 721 F.3d 945, 950 (8th Cir. 2013) (quoting Naber v. Shalala, 22 F.3d 186, 189 (8th Cir. 1994) (holding that "an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision" and that it is the claimant's burden to prove disability and provide credible evidence regarding his alleged impairment) (internal citation omitted); Myers v. Colvin, 721 F.3d 521, 527 (8th Cir. 2013); 20 C.F.R. §§ 404.1512(e), 416.912(e). The Court finds, therefore, that the ALJ was not required to order an additional examination of Plaintiff and that Plaintiff's argument to the contrary is without merit.

**C.    Opinion of Dr. Williamson:**

As stated above, pursuant to a consultative examination, Dr. Williamson opined that Plaintiff could not lift more than fifteen pounds, could stand only twenty minutes, walk only ten minutes before becoming short of breath, and only occasionally bend, stoop, and crouch due to back pain.  He also opined that Plaintiff had no limitations on his ability to sit normally in an eight-hour workday.  The ALJ gave Dr. Williamson's opinion only partial weight.  Specifically, the ALJ gave "little weight" to the limitations Dr. Williamson imposed on Plaintiff's ability to stand, walk, and lift, and substantial weight to the remainder of Dr. Williamson's opinion.  (Tr. 19).  Plaintiff contends that the ALJ's RFC determination is not based on substantial evidence because the ALJ gave little weight to Dr. Williamson's findings regarding Plaintiff's ability to lift, walk, and stand.  (Doc. 13 at 8).  For the following reasons the Court finds that the weight given to Dr. Williamson's opinion by the ALJ is based on substantial evidence and is consistent with the Regulations and case law.

Dr. Williamson offered his opinion regarding Plaintiff's ability to stand, walk, and lift despite his finding, upon examination, that Plaintiff was able to walk on his heels and toes, with ease; that his tandem walking was normal; that Plaintiff could hop on either foot bilaterally; that Plaintiff had full strength in his upper and lower extremities and 4/5 strength in his left deltoids and biceps; that Plaintiff had no joint swelling, erythema, effusion, tenderness, or deformity; that Plaintiff demonstrated "no limitations on his ability to sit, stand, or walk"; and that Plaintiff did "not demonstrate any shortness of breath."  (Tr. 335-37).  Thus, the limitations which Dr. Williamson ultimately imposed on Plaintiff's ability to lift, stand, and walk were inconsistent with his findings upon examination.  Indeed, an ALJ is not required to give a doctor's opinion

controlling weight where it is internally inconsistent.  Myers v. Colvin, 721 F.3d 521, 525 (8th Cir. 2013).

The lifting, standing, and walking limitations imposed by Dr. Williamson are also inconsistent with the notes of Plaintiff's treating doctors.  See Martise v. Astrue, 641 F.3d 909, 925 (8th Cir. 2011) (holding that when a physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight) (internal quotation marks and citation omitted); Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000); Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007) ("If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.").  In this regard, Dr. Hooshmand reported, in March 2008, that Plaintiff had no shortness of breath, no edema in his extremities, no permanent neurological deficits resulting from his stroke, and intact sensory modalities.  (Tr. 308-10).  Also, March 2008 emergency room records reflect that Plaintiff had full strength in all major muscle groups and that his extremities were without clubbing, cyanosis, and edema.  (Tr. 300).

Moreover, the limitations imposed by Dr. Williamson are inconsistent with what Plaintiff told his treating doctors.  Cf. Karlix v. Barnhart, 457 F.3d 742, 748 (8th Cir. 2006) (holding that contradictions between a claimant's testimony and what he actually told physicians weighs against the claimant's credibility).  For example, in March 2008, Plaintiff told Dr. Hooshmand that he did not have shortness of breath.  (Tr. 311).

**D.      Opinion of Ms. Anderson:**

Ms. Anderson, a SDM, opined that Plaintiff could only occasionally climb ramps, stairs, ladders, ropes, or scaffolds; that Plaintiff should avoid concentrated exposure to extreme cold, heat, humidity, fumes, odors, dusts, gases, poor ventilation, and hazards; and that Plaintiff could

only occasionally balance, stoop, kneel, crouch, and crawl.  Upon determining the weight to be given Ms. Anderson's opinion, the ALJ incorrectly characterized her as the "State agency *medical* consultant," and found that, due to his back condition, Plaintiff was more limited in terms of his ability to climb than suggested by Ms. Anderson because Plaintiff's back condition would be exacerbated by occasionally climbing.  The ALJ also found that, otherwise, Ms. Anderson's opinion was consistent with the evidence, including the reports of Plaintiff's doctors; that Ms. Anderson supported her opinion with a discussion of the relevant evidence; that, as a "*medical* consultant," Ms. Anderson was familiar with Social Security Administration policies and procedures; and that, therefore, substantial weight should be given to Ms. Anderson's opinion.  (Tr. 19-20).  Plaintiff contends that the ALJ's RFC determination is not based on substantial evidence because the ALJ erred in assigning any weight to Ms. Anderson's opinion.  (Doc. 13 at 9).  The Commissioner concedes the ALJ did improperly give weight to the opinion of a single decision-maker, but argues, nevertheless, that the ALJ independently evaluated the record and did not fully adopt Ms. Anderson's opinion.  (Doc. 19 at 14).

"A SDM is not a medical source and his/her opinion is not due any significant weight." Shinkle v. Colvin, No. 4:12-CV-1262-REL-SSA, 2014 WL 900913, at *6 (W.D. Mo. Mar. 7, 2014) (citing Dewey v. Astrue, 509 F.3d 447, 449 (8th Cir.2007)). "The ALJ may not rely on a SDM opinion." Clements v. Colvin, No. 6-12-03543-CV-S-REL, 2014 WL 988789, at *3 (W.D. Mo. Mar. 12, 2014). See also Kettering v. Astrue, 4:11CV646 RWS FRB, 2012 WL 3871995 (E.D. Mo. Aug. 13, 2012) report and recommendation adopted, 4:11CV646 RWS, 2012 WL 3872021 (E.D. Mo. Sept. 6, 2012) ("In addition, while the ALJ considered [the SDM's] opinion, he properly did not rely on it in making his determination as to plaintiff's RFC."). In this case, while the ALJ found that a portion of the SDM's opinion was entitled to "significant weight"

(Tr. 20), the ALJ properly did not rely on it in making her determination as to Plaintiff's RFC. In fact, the ALJ's RFC is more restrictive than the SDM's opinion; the ALJ found Plaintiff to be more limited because of his back condition than as suggested by Ms. Anderson. Indeed, the ALJ noted specifically that her RFC determination was more restrictive than that offered by Ms. Anderson (Tr. 19). Furthermore, as discussed in more detail below, the ALJ based her RFC on many factors including the medical record, Plaintiff's activities of daily living, Plaintiff's credibility, and Plaintiff's testimony at the administrative hearing. Accordingly, the Court finds the ALJ's mention of the SDM not fatal to her RFC determination.

**E.    Plaintiff's RFC:**

Plaintiff argues that the ALJ failed to include all of his limitations in the RFC assessment. (Doc. 13 at 7).

The Regulations define RFC as "what [the claimant] can do" despite his or his "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). See also Myers v. Colvin, 721 F.3d 521, 526 (8th Cir. 2013).

To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his impairments. Anderson v. Shalala, 51 F.3d. 777, 779 (8th Cir. 1995). Although

assessing a claimant's RFC is primarily the responsibility of the ALJ, a "'claimant's residual functional capacity is a medical question.'" <u>Lauer</u>, 245 F.3d at 704 (quoting <u>Singh v. Apfel</u>, 222 F.3d 448, 451 (8th Cir. 2000)).  The Eighth Circuit clarified, in <u>Lauer</u>, 245 F.3d at 704, that "'[s]ome medical evidence,' <u>Dykes v. Apfel</u>, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' <u>Nevland v. Apfel</u>, 204 F.3d 853, 858 (8th Cir. 2000)."  Thus, an ALJ is "required to consider at least some supporting evidence from a professional." <u>Id.</u>  <u>See also</u> <u>Vossen v. Astrue</u>, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); <u>Eichelberger</u>, 390 F.3d at 591.

As stated above, the ALJ found that Plaintiff had the following RFC:  Plaintiff could perform light work except that he could only occasionally climb ramps and stairs; he could never climb ladders, ropes or scaffolds; he could only occasionally balance, stoop, kneel, crouch, and crawl; he was limited to occasional reaching overhead with the left upper extremity; and he needed to avoid frequent exposure to extreme heat, extreme cold, fumes, odors, dusts, gases, and poor ventilation, as well as hazards such as dangerous machinery and unprotected heights.

As found above, the ALJ properly evaluated Plaintiff's credibility and determined that Plaintiff's complaints of disabling pain were not fully credible, for numerous reasons, including that Plaintiff's complaints were not consistent with the medical evidence of record.  (Tr. 14-20).  As required by the Regulations and case law, only after doing so and carefully considering the evidence, did the ALJ formulate Plaintiff's RFC based on all the credible evidence.  <u>See</u> <u>Tindell v. Barnhart</u>, 444 F.3d 1002, 1007 (8th Cir. 2006) ("The ALJ included all of Tindell's credible

limitations in his RFC assessment, and the ALJ's conclusions are supported by substantial evidence in the record."); McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) ("The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.") (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)). Notably, the ALJ identified Plaintiff's limitations and then assessed his work related abilities on a function-by-function basis.

To the extent Plaintiff contends that the ALJ's decision is not supported by substantial evidence because it does not completely mirror the opinion of a particular medical source, as discussed above, in formulating a claimant's RFC, the "ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011).

To the extent Plaintiff argues that the ALJ did not cite specific medical opinions to support her RFC determination and did not provide narrative discussion to support her RFC determination, the text of the ALJ's decision establishes that she did, in fact, consider the medical opinions of record and did provide a narrative of the medical evidence, upon determining Plaintiff's RFC. Only after considering all the evidence of record did the ALJ formulate Plaintiff's RFC based on her determination of the extent of Plaintiff's credible limitations. See Lauer, 245 F.3d at 704; Nevland, 204 F.3d at 858.

To the extent the ALJ may not have addressed every medical opinion in detail, the ALJ's failure to do so does not mean that she did not consider the omitted evidence. See Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) ("Although required to develop the record fully and

fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.").

Finally, to the extent Plaintiff argues that the ALJ should have included limitations in his RFC beyond those which the ALJ found credible, it is incorrect to find that a claimant has limitations or restrictions beyond those caused by his "medical impairment(s) including any related symptoms, such as pain." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *2 (July 2, 1996). In conclusion, the court finds that the ALJ's RFC determination is based on substantial evidence, that it is consistent with the Regulations and case law, and that Plaintiff's arguments to the contrary are without merit.

After determining Plaintiff's RFC and concluding that Plaintiff could not perform his past relevant work, the ALJ recognized that the burden shifted to the Commissioner to determine whether there was other work which Plaintiff could perform. (Tr. 20). The Commissioner may satisfy this burden through the testimony of a VE. See 20 C.F.R. § 404.1566(e). Such testimony, in the form of a response to a hypothetical question posed by the ALJ, constitutes substantial evidence supporting the Commissioner's decision, provided the ALJ's hypothetical question includes all of a claimant's credible limitations. Guilliams, 393 F.3d at 804. Indeed, the ALJ posed a hypothetical to a VE which described a person of Plaintiff's age and with his RFC, education, and work experience. See Martise v. Astrue, 641 F.3d 909, 927(8th Cir. 2011) ("The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole.") (quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006)).

Based on the testimony of the VE that there was work, existing in substantial numbers in the national economy, which Plaintiff could perform, the ALJ found Plaintiff not disabled.

Notably, the ALJ properly relied on the VE's testimony upon finding Plaintiff not disabled.  See

Martise, 641 F.3d at 927 ("Based on our previous conclusion . . . that 'the ALJ's findings of [the

claimant's] RFC are supported by substantial evidence,' we hold that '[t]he hypothetical question

was therefore proper, and the VE's answer constituted substantial evidence supporting the

Commissioner's denial of benefits.'") (quoting Lacroix, 465 F.3d at 889).  As such, the Court

finds that the ALJ's ultimate finding that Plaintiff was not disabled is based on substantial

evidence and that it is consistent with the Regulations and case law.

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a

whole supports Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in his Complaint (Doc. 1)

and Brief in Support of Complaint (Doc. 14) is **DENIED**.

**IT IS ORDERED** that a separate judgment be entered incorporating this Memorandum

and Opinion.

Dated this 23rd day of March, 2016.


 /s// Noelle C. Collins_____
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE